DS:SDD
F.#2012R00270

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M12-0278**

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -

CLIVE BENNETT and
BRIAN WILSON,

          Defendants.

- - - - - - - - - - - - - - - - - - -X

SEALED AFFIDAVIT IN SUPPORT
OF ARREST WARRANTS

(T. 18, U.S.C., § 1708)

EASTERN DISTRICT OF NEW YORK, SS.:

ROBERT HOFFMAN, being duly sworn, deposes and says that he is an Inspector with the United States Postal Inspection Service ("USPIS"), duly appointed according to law and acting as such.

On or about and between January 12, 2012 and March 16, 2012, within the Eastern District of New York and elsewhere, the defendants CLIVE BENNETT and BRIAN WILSON did knowingly and unlawfully steal, take, abstract, and remove from letters, packages, bags and mail, articles and things contained therein, in violation of Title 18, United States Code, Section 1708.

(Title 18, United States Code, Section 1708)

The source of your deponent's information and the grounds for his belief are as follows:

## I.   INTRODUCTION

1.   I am currently a Postal Inspector with USPIS, and have served in this capacity since October 1980.  My duties include the enforcement of federal laws involving crimes against postal property and U.S. mail.

2.   As an Inspector with USPIS, I have received training at the USPIS training academy.  I have conducted and participated in numerous investigations into the theft of articles from the U.S. mail.

3.   In addition, through my training, education, and experience - which has included (i) debriefing cooperating witnesses; (ii) reviewing records; (iii) conducting surveillance of individuals engaged in the violation of federal law; and (iv) executing search warrants on suspect premises - I have become familiar with the manner in which U.S. mail matter is stolen, concealed, "fenced" and otherwise sold or disposed of.

4.   I have personally participated in this investigation and have witnessed some of the facts and circumstances described herein.  In addition, I have received information from other federal law enforcement officials.  I also have reviewed documents obtained during the course of the investigation.  The statements contained in this affidavit are based on my own observations and review of documents, or reliable information provided to me by other law enforcement personnel.

II.   THE INVESTIGATION

5.    This affidavit is in support of arrest warrants for the defendants CLIVE BENNETT and BRIAN WILSON.  BENNETT and WILSON are employed by Swissport, a company located at John F. Kennedy Airport, in Queens, New York ("JFK").  Swissport handles air mail that is transported by Delta Airlines on behalf of the United States Postal Service.  BENNETT and WILSON are assigned to work at the U.S. postal facility at JFK (the "JFK facility").

6.    Since late 2011, and continuing until very recently, the USPIS has been receiving reports of rifled express mail at the JFK facility, indicating that items had been stolen from U.S. mail that had been processed by Swissport personnel prior to the mail being turned over to the U.S. Post office at JFK.  The missing items have included tens of thousands of dollars worth of jewelry, electronics, documents, and other items.

7.    Based on surveillance operations and the review of documents and records, I believe that the defendants CLIVE BENNETT and BRIAN WILSON are responsible for these thefts.

8.    On January 13, 2012, I received a report that, on January 12, 2012, an express mail parcel had been opened, and the contents stolen, while the parcel was being processed at the JFK facility.  The item taken from the parcel was diamond jewelry, valued by the sender at $8,319.00.  As set forth below, I

4

subsequently received numerous additional reports of items stolen from U.S. mail parcels that had been processed at the JFK facility.

9.  On January 20, 2012, an express mail parcel containing a compact disk was opened, and the disk was removed.

10.  On January 22, 2012, a Rolex watch, valued by the sender at $4,300.00, was stolen from an express mail parcel that had been processed at the JFK facility.

11.  On January 22, 2012, an Android smart phone, valued by the sender at $150.00, was stolen from an express mail parcel that had been processed at the JFK facility.

12.  On January 26, 2012, diamond jewelry, valued by the sender at $2,830.00, was stolen from an express mail parcel that had been processed at the JFK facility.

13.  On February 7, 2012, diamond jewelry, valued by the sender at $9,300.00, was stolen from an express mail parcel that had been processed at the JFK facility.

14.  On February 17, 2012, jewelry, valued by the sender at $975.00, was stolen from an express mail parcel that had been processed at the JFK facility.

15.  On February 24, 2012, a diamond necklace, valued by the sender at $3,833.28, was stolen from an express mail parcel that had been processed at the JFK facility.

16.  On February 24, 2012, a gold ring, valued by the

sender at $798.00, was stolen from an express mail parcel that had been processed at the JFK facility.

17. On February 24, 2012, jewelry, valued by the sender at $1,917.00, was stolen from an express mail parcel that had been processed at the JFK facility.

18. On February 24, 2012, jewelry, valued by the sender at $3,500.00, was stolen from an express mail parcel that had been processed at the JFK facility.

19. On February 26, 2012, a set of audio headphones was stolen from an express mail parcel that had been processed at the JFK facility.

20. On February 26, 2012, a diamond ring, valued by the sender at $898.00, was stolen from an express mail parcel that had been processed at the JFK facility.

21. On February 26, 2012, diamonds, valued by the sender at $14,870.00, were stolen from an express mail parcel that had been processed at the JFK facility.

22. On March 2, 2012, a diamond valued by the sender at $893.75 was stolen from an express mail parcel that had been processed at the JFK facility.

23. On March 9, 2012, a set of audio headphones was stolen from an express mail parcel that had been processed at the JFK facility.

24. On March 16, 2012, an Ipod, cellphone and a set of

earrings were stolen from express mail parcels that been
processed at the JFK facility.

25.   In addition, on January 13, 14, 15, 18 and 19, and
also on February 8, 12 and 17, express mail parcels that had been
processed at the JFK facility were opened, but no items were
taken.

26.   Upon learning of the thefts set forth above, I and
other law enforcement agents reviewed video surveillance footage
and employee records relating to the personnel who had access to
the parcels while they were being processed at JFK.   In addition,
Postal Inspectors and other law enforcement agents conducted
physical surveillance of the postal facility and personnel.

27.   A review of Swissport personnel records indicates
that six people have been assigned to work in the mail handling
area at JFK during the relevant time period.   A comparison of
personnel shift records for the assigned mail handlers against
the dates of the rifling and thefts indicates that BENNETT worked
on at least fifteen of the approximately eighteen days in which
the mail was compromised.   In addition, records indicate that
WILSON worked on at least twelve of the approximately eighteen
dates on which items were taken and/or mail was rifled.

28.   Based on my review of video surveillance footage
of the JFK facility, footage for February 8, 2012 shows BENNETT
taking an express mail bag to an isolated area at the other side

of the processing area where he works, which is inconsistent with his assigned duties. Normally, a mail handler should take the mail bags from the "can" in which they are shipped directly into the Post Office. Here, however, BENNETT delivered several bags to the Post Office, but left one bag in the can, which was attached to his "tugger" (small tractor). BENNETT used the tugger to drag the can containing the one bag out of view of the surveillance camera, where he remained with it for some time. Later, footage shows BENNETT returning from the isolated area with the bag on the seat of his tugger. Only then did BENNETT bring the express mail bag into the Post Office. As set forth above, I learned that an express mail parcel had been opened, but nothing was taken, on February 8, 2012.

29. On February 23, 2012, video surveillance footage shows BENNETT pull a can to an isolated area, outside the view of surveillance cameras. BENNETT then left the can unattended, at which time I covertly entered the area, and personally observed an express mail bag in the can that BENNETT had moved to the isolated area. I then returned to a concealed observation post. Later, BENNETT returned to the isolated area, outside the view of the surveillance cameras. At the end of the day, video surveillance shows that another Swissport employee retrieved the can, and recovered what appeared to be mail parcel remnants from inside the can.

8

30.  On February 28, 2012, surveillance footage shows WILSON and BENNETT pull a can to an isolated area.  After BENNETT and WILSON left the area, I covertly entered the area and personally observed several mail bags in a can near the can that they had segregated from the others.  I then returned to the concealed observation post.  BENNETT and WILSON returned to the area a short time later, along with another Swissport employee who remained present through the end of the shift.  I believe that the presence of the other Swissport employee discouraged BENNETT and WILSON from continuing to attempt to rifle mail and/or steal items on this occasion.

31.  On March 2, 2012, video surveillance footage shows WILSON pulling a can containing several express mail bags into an isolated area.  WILSON then placed the can in a way so as to conceal his activity.  WILSON left the can in the isolated area, and resumed work.  At approximately 10:30 p.m., when their shift ended, BENNETT and WILSON returned to the isolated area near the Swissport loading bays, where they had left the can.  Video surveillance footage shows BENNETT standing on an elevated area, where he appears to be serving as a lookout.  In addition, Postal Inspectors observed WILSON leaning into a can that contained express mail bags.  When another employee entered the outdoor loading area, WILSON temporarily stopped his activity, and retreated from the can, but resumed when the employee left the

area.

32.   WILSON was engaged in some activity with items inside the can for a total of approximately fifteen minutes. BENNETT and WILSON left the loading area together.   WILSON then left the Post Office at approximately 11:30 p.m., an hour after his shift ended.   BENNETT, however, returned to the loading area, where they had left the can, at approximately 12:00 a.m., an hour and a half after his shift ended.   Video surveillance footage shows BENNETT go into the isolated area, which was no longer under physical surveillance by Postal Inspectors, and then leave the area carrying express mail bags, which he took into the Post Office.   BENNETT left the mail bags in the Post Office, and then departed.

33.   Postal Inspectors examined the mail bags that BENNETT had left behind, and discovered that they contained a total of twenty-five express mail parcels.   Six of those parcels had been opened, but only one was missing any contents.   As set forth above, a diamond valued at $893.75 was missing from one of the parcels, which was sent by a jewelry company in Oregon, bound for the diamond district in Manhattan.

34.   In addition, on Friday, March 16, 2012, surveillance footage shows WILSON tug a can, which has an express mail bag in it, and positioning the can in such a way as to make it difficult to observe his activities.   Footage shows WILSON

engaged in some activity in or near the can for approximately ten minutes.  After WILSON finished his shift, Postal Inspectors searched the can, and discovered that ten parcels had been opened, and three were missing contents.  Postal Inspectors have determined that the missing items included an Ipod, a cellphone, and earrings.

III.  REQUEST TO SEAL

35.  I have been advised by an attorney for the government that a presumption of openness applies to judicial proceedings.  I have been further advised that, when appropriate, the Court may order that documents be filed under seal, so as to lessen the risk that evidence will be destroyed or subjects will flee during an ongoing investigation.  Here, I believe that if the subjects of this investigation were to learn of the existence of this application, before the warrants were executed, there is a serious risk that they would destroy evidence or flee.  Accordingly, I request that this affidavit be filed under seal, for a reasonable period of time, until unsealed by the Court.

WHEREFORE, it is respectfully requested that arrest warrants be issued for the defendants CLIVE BENNETT and BRIAN WILSON so that they may be dealt with according to law.  In

11

addition, for the reasons set forth above, I further request that this affidavit be filed under seal.

_____

Robert Hoffman
United States Postal Inspector

Sworn to before me this
19th day of March, 2012

_____
Honorable Joan M. Azrack
United States Magistrate Judge
Eastern District of New York